UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| STEPHEN R. WEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:16-cv-00145-RLY-TAB |
| | ) | |
| LOUISVILLE GAS & ELECTRIC COMPANY, | ) | |
| CHARTER COMMUNICATIONS, INC., | ) | |
| INSIGHT KENTUCKY PARTNERS II, L.P., | ) | |
| TIME WARNER CABLE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| LOUISVILLE GAS & ELECTRIC COMPANY, | ) | |
| | ) | |
| Cross Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARTER COMMUNICATIONS, INC., | ) | |
| INSIGHT KENTUCKY PARTNERS II, L.P., | ) | |
| TIME WARNER CABLE, | ) | |
| | ) | |
| Cross Defendants. | ) | |

**ENTRY ON DEFENDANT CHARTER COMMUNICATIONS, INC.'S, INSIGHT KENTUCKY PARTNERS II, L.P.'S, AND TIME WARNER CABLE'S MOTION TO DISMISS**

On July 11, 2016, Plaintiff, Stephen R. West, filed a complaint in state court against Defendant, Louisville Gas & Electric Company ("LGEC"), seeking a declaration that LGEC exceeded the scope of its easement by installing fiber optic cables on its pre-existing utility infrastructure. (*See* Filing No. 1-1, State Court Record at 5-8). Plaintiff

1

also sought damages through a variety of additional claims. (*Id.* at 9-12). After the case was removed to federal court, (Filing No. 1), Plaintiff amended his complaint and added Charter Communications, Inc., Insight Kentucky Partners II, L.P., and Time Warner Cable (collectively "Insight") as defendants. (Filing No. 27). Insight now moves to dismiss all of Plaintiff's claims arguing that they are foreclosed by the Cable Communications Policy Act of 1984.

For the reasons set forth below, the court **GRANTS** Insight's Motion to Dismiss.

## I. Background

Plaintiff owns a parcel of real estate (the "Property") located at 51 Arctic Springs Road in Jeffersonville, Indiana. (Filing No. 33, Amended Complaint at ¶ 8). The Property sits adjacent to the Ohio River and contains a 248-foot tower that LGEC utilizes to run utility lines between Kentucky and Indiana. (*Id.* ¶ 9). LGEC's maintenance of this infrastructure is governed by an easement, the meaning of which the parties vehemently dispute. Accordingly, a careful look at its history is necessary.

The easement originated in 1938, when the Interstate Public Service Realty Company ("IPSRC") granted the Public Service Company of Indiana ("PSCI") an easement across the Property (the "Easement"). (*Id.* ¶ 10). Specifically, the Easement provides that the IPSRC:

> hereby grants and conveys unto Public Service Company of Indiana . . . and unto its successors and assigns, a right-of-way and perpetual easement to maintain, operate, renew, repair and remove a line or lines of poles and towers and all necessary equipment, wires, cables and appurtenances in connection therewith, for the transmission, distribution and delivery of electrical energy to the Grantee and other persons and concerns and to the public in general for light, heat, power, telephone and/or other purposes.

2

(Filing No. 33-1, Exhibit A).

Through a series of transactions, Plaintiff's parents acquired the Property in the early 1970s. (Complaint ¶ 12). In 1976, PSCI assigned its rights to the Ohio Valley Transmission Corporation ("OVTC"), a company that merged into LGEC. (*Id.* ¶¶ 2, 13; Filing No. 33-1, Exhibit B). That same year, Plaintiff's parents and OVTC entered into a Supplemental Deed of Easement (the "1976 Supplemental Agreement"), which addressed the parties' rights under the Easement. (*Id.* ¶ 14). The recitals of the 1976 Supplemental Agreement explain that OVTC wishes "to replace the existing transmission lines and upgrade its facilities and wishes to update said easements so as to specifically define the rights of the parties and have of record the names of the present-day holders of title to the property over which it presently has a perpetual easement." (Filing No. 33-3, Exhibit C at 1). The 1976 Supplemental Agreement then provides:

> Grantors hereby convey and re-convey to the Company all rights heretofore acquired by the Company or its predecessors, including the perpetual right, privilege and easement to enter upon, construct, reconstruct, replace, upgrade, maintain, operate, and/or remove, one or more lines for the transmission of electrical energy, together with any and all towers, poles, guys, stubs, anchors, foundations, and other necessary equipment, fixtures and appurtenances over, across, and within the existing 100 feet wide easement, a part of or all of which crosses the property of Grantors . . . .

(*Id.* at 2).

In 1990, LGEC approached Plaintiff's parents again. This time LGEC sought their consent to enter into a Second Supplemental Deed of Easement, which would have specifically permitted LGEC to "upgrade and remove communication and telephone systems . . . ." (Filing No. 33-4, Exhibit D at 1). Plaintiff's parents refused the invitation

3

and the Second Supplemental Deed of Easement was never executed. (Complaint ¶ 16). Subsequently, Plaintiff acquired the Property from his parents. (*Id.* ¶ 8).

Insight enters the picture ten years later. In 2000, LGEC contracted with Insight and granted it the right to run fiber optic cables across LGEC's existing infrastructure. (*Id.* ¶ 17; *see also* Filing No. 33-5, Exhibit E, Insight Agreement at 1). Plaintiff was none too pleased by this arrangement. He filed the present action against LGEC arguing that the installation (and continued use) of the fiber optic cables exceeds the scope of LGEC's Easement. Specifically, Plaintiff maintains that the Easement only permits LGEC to maintain electrical energy, not fiber optics. Plaintiff subsequently amended his complaint and added Insight as a defendant. (Filing No. 33, Amended Complaint).

## II. Discussion

### A. Legal Standard

Insight moves to dismiss Plaintiff's claims under Rule 12(b)(6), which authorizes a court to dismiss a claim where the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility refers to the requirement that plaintiffs must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The court must accept all well-pleaded facts as true and construe all inferences in the plaintiff's favor. *Forgue*, 873 F.3d at 966.

## B. The Cable Communications Policy Act of 1984

Congress enacted the Cable Communications Policy Act of 1984, 47 U.S.C. § 521 *et seq.* (the "Cable Act"), to address the rapid expansion of the cable industry. *Daniels Cablevision, Inc. v. San Elijo Ranch, Inc.*, 158 F.Supp.2d 1178, 1180-81 (S.D. Cal. 2001); *see also Cable Investments, Inc. v. Woolley*, 867 F.2d 151, 154 (3rd Cir. 1989). Because the previous law regulating cable—the Communications Act of 1934—was enacted prior to the advent of cable television, Congress sought to establish a national policy to guide the development of the cable industry. *See* H.R. Rep. No. 98-934, at 19 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 4655, 4656.[1]

As part of the Cable Act, Congress authorized cable operators franchised by local authorities to construct their cable system over public rights-of-way and easements dedicated for compatible use. *See* U.S.C. § 541(a)(2); *Woolley*, 867 F.3d at 154. Section 621(a)(2) provides:

> Any franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is [sic] within the area to be served by the cable system and *which have been dedicated for compatible use*s . . . ."

---

[1] The stated purposes of the Cable Act were: "(1) establish a national policy concerning cable communications; (2) establish franchise procedures and standards which encourage the growth and development of cable systems and which assure that cable systems are responsive to the needs and interests of the local community; (3) establish guidelines for the exercise of Federal, State, and local authority with respect to the regulation of cable systems; (4) assure that cable communications provide and are encouraged to provide the widest possible diversity of information sources and services to the public; (5) establish an orderly process for franchise renewal which protects cable operators against unfair denials of renewal where the operator's past performance and proposal for future performance meet the standards established by this subchapter; and (6) promote competition in cable communications and minimize unnecessary regulation that would impose an undue economic burden on cable systems." 47 U.S.C. § 521.

47 U.S.C. § 541(a)(2) (emphasis added).

Here, the parties agree that no public right-of-way is implicated. Instead, they dispute whether the Easement granted to LGEC has been "dedicated" for "compatible use." If so, then the Cable Act authorizes Insight's use of the Easement. Thus the court is tasked with determining what "dedicated" and "compatible use" mean within the context of the Cable Act.

### 1. The Easement has been "dedicated" within the meaning of the Cable Act.

The Seventh Circuit has not yet addressed what "dedicated" means within the Cable Act. Courts across the country have reached opposite conclusions as to what "dedicated" means. *Century Southwest Cable Television, Inc. v. CIIF Associates*, 33 F.3d 1068, 1070-71 (9th Cir. 1994) (noting split in authorities). The majority of circuits have adopted a narrow, technical interpretation of the term "dedicated," holding that an easement is dedicated within the meaning of the Cable Act only when it has been formally dedicated to the public. *TCI of North Dakota, Inc. v. Schriock Holding Co.*, 11 F.3d 812, 814-15 (8th Cir. 1993); *see also Cable Holdings of Georgia, Inc. v. McNeil Real Estate Fund VI, Ltd.*, 953 F.2d 600, 605-06 (11th Cir. 1992), *reh'g denied en banc*, 988 F.2d 1071 (11th Cir. 1993); *Media General Cable of Fairfax, Inc. v. Sequoyah Condominium Council of Co-Owners*, 991 F.2d 1169, 1172-73 (4th Cir. 1993); *San Elijo Ranch*, 158 F.Supp.2d at 1181. This means that "the grantor must make public his or her intention to appropriate property for a public use and the same must be accepted by or on behalf of the public for such use." *Schriock Holding*, 11 F.3d at 815. However, other

courts have interpreted "dedicated" in its plain and ordinary meaning, allowing private easements to be within the scope of the Cable Act so long as they have been set aside for compatible uses. *See Greater Worcester Cablevision, Inc., v. Carabetta Enterprises, Inc.¸* 682 F.Supp. 1244, 1258-59 (D. Mass. 1985); *Mumaugh v. Diamond Lake Area Cable TV Co.*, 183 Mich. App. 597, 602 (Mich. Ct. App. 1990).[2]

As with any question of statutory interpretation, the court begins by looking at the text of the statute. The relevant provision of the Cable Act authorizes the construction of a cable system "through easements . . . which have been dedicated for compatible uses . . . ." 47 U.S.C. § 541(a)(2). The Cable Act does not define dedicate. "[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Bilski v. Kappos*, 561 U.S. 593, 603 (2010) (internal quotations and citations omitted). Dedicate means in a general sense "to set apart to a definite use." *Dedicate*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). Thus, under the ordinary meaning of "dedicate," an easement is dedicated where it has been set apart or set aside for a definite use (in this case, a compatible one).

However, some courts have operated under the belief that dedicated is a technical term and should be construed in the context of property law. *E.g. Sequoyah Condominium*, 991 F.2d at 1173. When Congress uses technical words or terms of art,

---

[2] There is some tension in the Eleventh Circuit when comparing its decisions in *Centel Cable Television Co. of Florida v. Admiral's Cove Associates, Ltd.*, 835 F.2d 1359 (11th Cir. 1988) and *Centel Cable Television Co. of Florida v. Thomas J. White Development Corp.*, 902 F.2d 905 (11th Cir. 1990), with its decision in *Cable Holdings*. *See Century Southwest*, 33 F.3d at 1071 (noting tension between *Admiral's Cove* and *Cable Holdings*).

7

such words are to be given their technical meaning. *Corning Glass Works v. Brennan*, 417 U.S. 188, 201 (1974) (citation omitted). Black's defines dedication as the "[t]he donation of land or creation of an easement for public use." *Dedication*, BLACK'S LAW DICTIONARY (10th ed. 2014). Thus under the technical definition of dedicate, an easement is only dedicated when the landowner relinquishes his rights of exclusion so that the general public may use the property. *See Schriock Holding*, 11 F.3d at 815.

The text of Section 621(a)(2) does not indicate either way whether Congress intended dedicated to be interpreted generally or in the context of property law. Even construing the phrase in conjunction with "public rights-of-way" and the rest of Section 621(a)(2), the court cannot say one method of interpretation is clearly correct. Accordingly, the court finds "dedicated" to be ambiguous.

When looking at the broader structure of the Cable Act, however, it becomes clearer that Congress meant "dedicated" in its ordinary, common meaning. *See King v. Burwell*, 135 S. Ct. 2480, 2492 (2015) (ambiguous words are to be interpreted within the broader structure of a legislative act). The Cable Act was enacted to help the cable industry grow. Indeed, one of the stated purposes of the act was to "establish franchise procedures and standards which encourage the growth and development of cable systems . . . ." 47 U.S.C. § 521(2); *see also United Cable Television v. Louis J. Eyde Ltd. Family Partnership*, No. 5:1989cv00103, 1989 U.S. Dist. LEXIS 18154, at *5 (W.D. Mich. Nov. 20, 1989) ("[A]n important objective of the Cable Act was to alleviate or minimize the patchwork of federal, state and local laws regulating the cable television industry."). In Congress' judgment, it was desirable that cable systems provide "the widest possible

8

diversity of information sources and services to the public." 47 U.S.C. § 521(4).
Congress simply wanted cable providers to have greater access to the public.
Accordingly, interpreting "dedicated" in its ordinary, common meaning to allow cable
franchises to use easements that have been set aside for compatible purposes better
comports with Congress' intent than does Plaintiff's narrow interpretation. *See King*, 135
S. Ct. at 2493.

The legislative history supports this conclusion. House Report No. 98-934—the
chief piece of legislative history for the Cable Act—explains:

> Subsection 621(a)(2) specifies that any franchise issued to a cable system
> authorizes the construction of a cable system over public rights-of-way, and
> through easements, which have been dedicated to compatible uses. *This
> would include, for example, an easement or right-of-way dedicated for
> electric, gas or other utility transmission.* Such use is subject to the standards
> set forth in section 633(b)(1)(A), (B) and (C). Consideration should also be
> given to the terms and conditions under which other parties with rights to
> such easements and rights-of-way make use of them. *Any private
> arrangements which seek to restrict a cable* system'*s use of such easements
> or rights-of-way which have been granted to other utilities are in violation
> of this section and not enforceable.*

H.R.Rep. No. 98-934, at 59 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 4655, 4696
(emphasis added); *see also Mumaugh*, 456 N.W.2d at 428. This broad language supports
the conclusion that cable operators could access private easements, so long as their use
was compatible. Interpreting dedicated narrowly gives too little effect to the clause
"easements . . . dedicated for compatible uses" where the legislative history illustrates
that Congress sought broad access for cable providers.[3] It is also important to note that

---

[3] Several courts also discuss Section 633—which was originally included in the bill from the
House but ultimately omitted from the final version of the Cable Act—in their analysis of the

the broad interpretation has been adopted by the Federal Communications Commission. *See Century Southwest*, 33 F.3d at 1070-71 (citing *Amendment to 47 C.F.R. Parts 1, 63, 76 and 78, Implementation of the Provisions of the Cable Communications Policy of 1984*, 50 Fed.Reg. 18,637, 18,647 (1985)); *see also City of Chicago. v. F.C.C.*, 199 F.3d 424, 428 (7th Cir. 1999) (noting the FCC is charged with the administration of the Cable Act).

Even though the narrow interpretation of Section 621(a)(2) has been favored by the majority of circuits to address the issue, the court is not bound by the interpretations of other circuits. While those decisions are entitled to great respect, it is worth noting that this issue has produced considerable disagreement. *See Cable Holdings*, 988 F.2d. at 1082 (Tjoflat, Chief J. dissenting) ("To potential litigants (and to me) this circuit's interpretation of Section 621(a)(2) is confused."); *see also Sequoyah Condominium*, 991 F.2d at 1175-76 (Kaufman, J. dissenting). Moreover, those decisions are based on an interpretation largely guided by the canon of constitutional avoidance. *E.g. Schriock Holding*, 11 F.3d at 815; *see also Cable Holdings*, 953 F.2d at 604-05. As the court will discuss later, the court believes that a broad reading of the term "dedicated" does not

---

legislative history. *Woolley*, 867 F.2d at 156; *Cable Holdings*, 953 F.2d at 606-07. Section 633 would have allowed cable providers to compel the owner of a multi-dwelling unit to permit them to install the cable system in the *interior* of the dwelling. *See Woolley*, 867 F.2d at 156. The omission of Section 633 does not have any bearing on the present case because there is no allegation that Insight is accessing the interior of Plaintiff's building. For this reason too, decisions dealing with a cable provider's claim to access the interior of an apartment building or multi-unit dwelling are distinguishable. *See Woolley*, 867 F.2d at 158-59; *Cable Holdings*, 953 F.2d at 609.

render the statute unconstitutional, and so the canon of constitutional avoidance is of little assistance.

Turning to the present case, the Easement has been dedicated within the meaning of the statute. The plain language makes clear that the LGEC, as the grantee, has "a right-of-way and perpetual easement" for the purposes of maintaining "all necessary equipment, wires, cables, and appurtenances . . . ." This shows that a part of the Property has been set aside for utility use. The 1976 Supplemental Agreement does nothing to alter this conclusion. It incorporated "all rights heretofore acquired by the Company" from the Easement including the "perpetual right, privilege and easement." Accordingly, the court finds that the Easement has been "dedicated" within the meaning of the Cable Act.

### 2. Insight's use of the easement is a "compatible use"

In order for Insight to succeed on its Motion, the Easement must also be dedicated for a "compatible use." The court need not labor over this issue because the running of fiber optic cables across the existing infrastructure is a compatible use of LGEC's Easement. The Easement exists to run utility wires across the property, and so the addition of fiber optic cables does not conflict with Easement's purpose or over-burden Plaintiff's property. The legislative history supports this conclusion, *see* H.R.Rep. No. 98-934, at 59, as does case law. *See Wang v. City of Pleasanton*, 434 Fed. Appx. 666, 668 (9th Cir. 2011) (cable is compatible with utility uses); *RCN Telecom Services, Inc.*, 413 F.Supp.2d. at 469 ("'Compatible uses' include uses for other utility transmissions, such as gas, electricity, or telephone service.").

Plaintiff argues that Insight's use is not compatible because, although cable might be compatible, Insight provides other services including telephone and internet, which presumably are not. But "cable system" under the Cable Act is not limited to a system solely providing cable. *See* H.R.Rep. No. 98-934, at 44 ("A facility would be a cable system if it were designed to include the provision of cable services (including video programming) along with communications services other than cable service."). Fiber optics, even if used to provide services other than cable, are still part of the cable system. *See Cable TV Fund 14-A, Ltd. v. City of Naperville*, No. 96 C 5962, 1997 WL 433628, at *18 (fiber optic cables are properly considered part of a cable system). The court finds that Insight's use is compatible with the Easement.

### 3. Insight's use is not unconstitutional

Because the court has found the Easement to be dedicated for a compatible use, it must now confront Plaintiff's constitutional challenge. Plaintiff argues that the statute is unconstitutional because (1) the Cable Act re-writes the terms of the Easement and the 1976 Supplemental Agreement, and (2) the Cable Act amounts to an unconstitutional taking.

With respect to Plaintiff's first contention, Plaintiff only cites one case, *Landgraf v. USI Film Products*, 511 U.S. 244, 270 (1994), for the proposition that the Cable Act retroactively re-writes the Easement. But *Landgraf* did not construe the Cable Act, and no court has invalidated the Cable Act under the retroactivity doctrine. To the extent that the retroactivity doctrine is applicable, it does not apply here as Insight's use does not *burden* any of Plaintiff's rights under the Easement and 1976 Supplemental Agreement

12

because Plaintiff already set aside the property for a compatible use. The statute does not take away any rights enjoyed by Plaintiff or add any additional duties. Accordingly, the court finds the retroactivity doctrine inapplicable.

The takings issue is much closer. The Fifth Amendment prevents the government from taking private property for public use without just compensation. U.S. CONST. amend. V. Though no court has invalidated the Cable Act on constitutional grounds, many have expressed concern that if dedicated were to be interpreted broadly, then the Cable Act would authorize unconstitutional takings. *Sequoyah Condominium*, 991 F.2d at 1175; *Cable Holdings*, 953 F.2d at 602; *Schriock Holding*, 11 F.3d at 815. Some courts have worked around the takings issue by pointing out that the statute allows for compensation where the cable provider damages the property during installation. *See* 47 U.S.C. § 541(a)(2)(C) (providing that the owner of the property be justly compensated for any damages caused by the cable operator); *see also Mumaugh*, 183 Mich. App. at 606 (noting that statute's provision for compensation sufficiently addresses the taking problem). But that reasoning is not quite satisfactory because landowners—and, Plaintiff, in the present case—are not basing their taking claim on the property being damaged; they are basing their taking claim on the installation and maintenance of the cable system itself. Moreover, whether a statute provides for compensation does not, alone, answer a Fifth Amendment takings question. *See Cable Holdings*, 988 F.2d at 1075-76 (Tjoflat, C.J. dissenting) (noting the just compensation clause is self-executing). The court believes this line of reasoning does not resolve the takings issue.

13

Instead, the court finds that no taking has occurred because Plaintiff has failed to allege that Insight's use materially burdens Plaintiff's property. *Carabetta Enterprises*, 682 F.Supp. at 1259 ("If no additional burden is imposed, no taking of property will occur."); *Mumaugh*, 183 Mich. App. at 606 (same); *Louis J. Eyde*, 1989 U.S. Dist. LEXIS, at *8 n. 2 (same); *see also* Matthew P. Pritts, *The Material Burden Test: The Better Method of Determining Takings Issues Arising Under Section 621(a)(2) of the Cable Communications Policy Act of 1984*, 48 Wash. & Lee Law. Rev. 1109, 1129-39 (1991). Insight's use of the Easement is compatible with its original purpose and does not place any additional burden on the property.[4]

Plaintiff argues that *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) compels a decision in his favor. In *Loretto*, a New York law provided that "a landlord must permit a cable television company to install its cable facilities upon his property." *Id.* at 421. The Supreme Court held that the law amounted to a taking because the "permanent physical occupation authorized by government is a taking without regard to the public interests that it may serve." *Id.* at 426. The court noted that its holding was "very narrow." *Id.* at 441.

But the court finds *Loretto* distinguishable because the New York statute granted cable operators an absolute right to install its cable systems on a landlord's property regardless of whether an easement had been granted.[5] The Cable Act does not grant such

---

[4] Plaintiff alleges that multiple flashing lights causes a substantial and unreasonable annoyance. (Complaint ¶ 23). But an annoyance does materially burden the property.

[5] The statute read, in part: "No landlord shall . . . interfere with the installation of cable television facilities upon his property or premises . . . ." *Loretto*, 458 U.S. at 423 n.3.

14

a right. It only applies where the landowner has already dedicated a part of his property for a compatible use. The Cable Act only permits access to *pre-existing* utility easements; it does not allow a cable provider to *create* an easement. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1028-29 (1992). The latter would be unconstitutional. *See Borre v. United States*, 940 F.2d 215, 221 n.14 (7th Cir. 1991) (noting that if a utility company refuses to lease space on its poles, a municipality would have to exercise its right of eminent domain to obtain an easement on behalf of the cable franchisee). *Loretto* simply does not command a different result.

### III. Conclusion

By enacting the Cable Act, Congress was not taking away private property; rather, it was authorizing an additional use of the property similar to that which the landowner had already set aside for a public purpose. Plaintiff's predecessor-in-interest granted a utility company an easement to run wires across his property to benefit the public. Insight's use of the easement is compatible, and no additional burden has been placed on Plaintiff's property. Accordingly, no unconstitutional taking has occurred, and Plaintiff cannot plausibly allege any claims against Insight. Therefore the court **GRANTS** Insight's Motion to Dismiss all claims against Insight. (Filing No. 55). **SO ORDERED** this 8th day of January 2018.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.